## E. N. ROWELL CO. v. WILLIAM KOEHL CO.

(Circuit Court of Appeals, Second Circuit. February 2, 1917.)

No. 8.

PATENTS ⊜⟹328—VALIDITY AND INFRINGEMENT—MACHINE FOR MAKING PILL BOXES.

The Rowell and Little patent, No. 844,190, for a machine for making paper boxes, was not anticipated, but is valid and a pioneer patent, the machine described being the first to successfully make automatically

what are known commercially as French edge pill boxes, and as such is entitled to a broad construction and a broad range of equivalents. Claims 1, 3, and 5 also *held* infringed.

Appeal from the District Court of the United States for the Western District of New York.

Suit in equity by the E. N. Rowell Company against the William Koehl Company. Decree for defendant; and complainant appeals. Reversed.

For opinion below, see 216 Fed. 780.

The E. N. Rowell Company is a corporation organized and existing under the laws of the state of New York and will be referred to as complainant. It is engaged in the manufacture of paper pill boxes at Batavia, in the county of Genesee, in the state of New York. The William Koehl Company is a corporation organized and existing under the laws of the state of New York and will be referred to as defendant. It is engaged in the manufacture of paper box machines at Jamestown, in the county of Chautauqua, and state of New York.

The suit is brought for an alleged infringement of patent No. 844,190, issued by the United States Patent Office to Edward N. Rowell and James Little as inventors, and to complainant as assignee, on February 12, 1907. The defendant maintains that the patent is invalid, and, if valid, that it does not infringe. The defendant avers that the material and essential features of complainant's machine were fully described and set forth in patents of the prior art. The defendant has cited 161 patents; and it is also averred that the alleged improvements of the patent in suit were, long before the alleged invention, known to and used by certain persons, whose names and places of residence are set forth, to the number of over 100. The defendant's alleged infringing machine is covered by patent No. 1,098,314.

The District Judge has held the patent valid, but not infringed. In his opinion he states: "My conclusion is that claims 1, 3, and 5 of the patent in suit are valid, but were not for a pioneer invention, and that they are in fact of narrow scope, and must be limited to the construction shown in the specification. Defendant's machine, as hereinbefore stated, is materially different from complainant's, and is not an infringement thereof. A decree dismissing the bill, with costs, may be entered."

Hans v. Briesen, of New York City, for appellant.

Frank Keiper, of Washington, D. C. (Melville Church, of Washington, D. C., of counsel), for appellee.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

ROGERS, Circuit Judge (after stating the facts as above). The patent in suit is for a machine the particular object of which is to manufacture automatically the top and bottom halves of the ordinary small pill boxes which are used in the drug stores. The patent does not use the expression "pill boxes," yet it is understood that it is intended for the manufacture of that type of boxes. The specification of the patent covers 12 printed pages, and attached to these are 11 pages of drawings, and the number of the claims is 62.

The Clark & Illy patent, being patent No. 1,098,314, is the patent of the defendant, and was issued May 26, 1914. The specification of that patent covers 19 printed pages, and attached to these are 11 pages of drawings, and the claims number 92. The specification states that the object of the invention is to produce a machine for making round pill boxes.

The machinery of the patents is not simple, and the language of the patents makes difficult reading. The boxes which are made by the machine of the patent in suit are known to the trade as French edge pill boxes. They are made up by joining together three essential parts. The body of the box is composed of a ring or cylinder, against one edge of which a disc is placed, and the disc and the ring are then united by a strip of pasted paper, which overlaps the projecting edge of the disc all around the box, being also pasted up against the sides of the ring. As the ring is of smaller diameter than the disc, the gummed paper uniting the strip has to be distorted to a considerable extent in order to be bent around the flange formed by the disc. We are told that in dealing with these small boxes and the delicate paper uniting strip it was found to be comparatively easy to handle them with the fingers of the human hand, but that it was for many years considered quite impossible to substitute any machinery which would bring about a union of ring, disc, and paper by any automatic machine with the perfection and rapidity that was essential to convert the box from a handmade to a machine-made product.

It appears that the top and bottom of the pill box are exactly alike, with the exception that the cap which is used to form the bottom of the box is provided with an additional internal pasteboard ring; and it is pointed out that, if the supplemental ring is driven into the cap, the cap becomes a bottom. If the supplemental ring is omitted, the cap remains a top. The tops and bottoms are identical in size, shape, and construction, and they do not become pill boxes until placed in proper juxtaposition. The parts are so small and delicate that they cannot be readily handled by ordinary machinery.

While the patents of both complainant and defendant are lengthy, and the machines of both are complicated, the real question at issue has to do with a small, though important, part of the two machines. The subject of this controversy relates to the act, which these machines perform, of fastening together by means of gummed paper a cylindrical ring of pasteboard or other material and a cylindrical disc, likewise of pasteboard, of a diameter somewhat greater than that of the ring. The result is the pill box which these machines are intended to produce. We thus have three essential things—the ring, the disc, and the paper—to be brought together and united.

The machine of the patent in suit brings these three things together by means of manually affixing the cylindrical pasteboard ring to a mandrel, letting the mandrel, in pursuance of the preordained functioning of the machine, assume a position in front of a disc holder, thereby bringing the disc and the ring in proper juxtaposition. While the mandrel has been assuming, by revolution of the wheel to which it is affixed, the position aforesaid, a flat piece of metal, called a table, has moved to one side of its appointed path and picked up or picked off a piece of gummed paper of a length sufficient to surround the circumference of disc and ring or either. The mandrel, with the ring upon it and in juxtaposition to the disc, being in position, the piece of metal called the table travels underneath these two pieces of pasteboard and in frictional contact therewith. There is a groove which fits the pro-

jecting disc, and as disc and ring revolve under the action of the moving table the gummed paper is wound upon the same, pressed against it, and ironed. The table having thus moved across and under the position of the mandrel and ring and disc, the machine moves again and by revolution of the wheel on which the mandrel is mounted removes mandrel and all from its position over the table path, and (in the absence of any mandrel) the table moves back and picks up or cuts off another piece of gummed paper. By the time it has done that another mandrel has gotten into position by the revolution of the wheel on which the two mandrels (180 degrees apart) are mounted, i. e., one-half a revolution; and so the operation goes on as long as there is an operator to feed the uppermost mandrel head, and there are any discs in the disc reservoir, and power is applied to the machine.

The specification of the patent in suit states that:

"This invention relates to a machine for making paper boxes, composed of a cylindrical body and a circular head, which are united by a band of gummed paper wound around the body and the head. One object of our invention is to produce a machine in which the feeding of the heads and the winding of the bands are effected automatically."

The claims involved are claims 1, 3, and 5. Claim 1 reads as follows:

"The combination, with the movable table or support, of a mandrel movable toward and from said table or support, substantially as set forth."

Claim 3 reads as follows:

"The combination, with the reciprocating table, of mandrels adapted to bear successively against said table, and a rotary frame provided with bearings supporting said mandrel, substantially as set forth."

Claim 5 reads as follows:

"The combination, with the movable table, of a rotary frame, shafts journaled in said frame and provided with mandrels adapted to bear against said table, substantially as set forth."

Claim 1 is general in its nature, and lays stress upon the use of a mandrel in combination with a movable table or support. Claim 3 emphasizes the use of a reciprocal table in combination with the mandrels, which are to bear successively against the table. Claim 5 differs from claim 3 in that it describes more specifically the method in or by which the mandrels are adapted to bear successively against the table. That is accomplished by means of shafts journaled in the rotary frame.

The complainant claims that the patent in suit is a pioneer patent, and represents the first known practical machine capable of turning out, as a regular machine product, with the regularity and speed essential to a machine product, of the paper caps from which pill boxes are made. It asserts that, prior to the advent of the machine shown in its patent, the art had been striving for 30 years at least, and with great industry and assiduity, to devise a machine for converting the hand-made pill boxes into a machine product. It insists that all prior machines disclosed in the record were merely mechanical aids to hand work, and that not one of them reached that phase which contemplated superseding the work of human hands by a machine product; and the claim is that, when complainant's machine was first made, no pill boxes in the ·

United States were being made by any known machinery, but that all were being made by hand labor in factories and by women and children at home.

The defenses are anticipation, limitation of the claims, and non-infringement. In addition, the attention of the court is called to the delay in putting the patent through the Patent Office, and we are asked to hold that this long delay is such unequitable conduct as to deprive the complainant of any right to equitable relief.

We come now to inquire as to the prior art. The complainant's expert testifies that prior to the application for the patent in suit such pill boxes as are made under the machine of the patent were produced by hand labor, a slow and relatively expensive process. He declares that the patent in suit discloses the first practical device by which such pill boxes were ever produced by machinery. His testimony is that:

"On the foregoing it is clear that an inventor in the art of making pill boxes by automatic machinery, devoting himself to that problem at a time when such pill boxes were made by hand only, confronted an extremely difficult and complicated problem, which, so far as I am aware, was not solved until the time the machine of the patent in suit was devised. The machine described in that patent was the first of its kind. No machine in the prior art, of which I have any knowledge or information, was capable of making or producing boxes like those in evidence in this suit as either complainant's boxes or defendant's boxes. After the invention of the Rowell & Little patent, in suit, the world had for the first time received information which enabled it to produce thereafter machine-made pill boxes like complainant's and defendant's boxes."

Again he testifies that the patent in suit is—

"the first machine of its kind so far as is known to me, which involved the use for the purpose of making paper boxes of the intermittently rotating mandrel frame carrying two or more intermittently and independently rotating mandrels thereon for the purpose of completing a box. This opinion is founded upon a study of a large number of patents, which have been referred to by the defendant in its answer, in none of which is there described or referred to a complete operative machine capable of producing round French edge pill boxes by automatically bringing the box ring toward the fixed wrapping position in which the disk head is automatically brought into proper relation thereto and these two elements then automatically wrapped with a strip of gummed paper, producing a coherent pill box of the character described. The best that can be said for these prior patents is that they show extremely crude machines generally adapted for other purposes than for making pill boxes. Such so-called machines—I should prefer to call them tools or implements, because they are not really machines, but only aids to manual labor —were mostly operated by treadles or manually operated levers, and were merely adapted to assist the operator in the manufacture of large boxes of the kind already referred to, when I spoke of hat boxes, shoe boxes, collar boxes, etc. In none of those patents are the three essential parts of the finished box brought together automatically, but in every instance these prior mchanical devices required the constant attention and assistance of one or more operators, the operators doing a large part of the work, and the machine in each case was incapable of producing a box without such assistance on the part of the operator. Certainly none of these machines was capable of automatically turning out a completed pill box. It was not until the machine of the Rowell patent came into the field that round pill boxes were entirely made by automatic machinery, capable of operating at a high rate of speed and of turning out completed pill boxes in enormous quantities. Such a patent, in my opinion, fulfills all the requirements of a pioneer patent. It was the first

machine actually to do a certain thing and to bring about a certain desired result."

We have examined the more important of the patents upon which the defendant relies, and particularly the machines of the Terry, Maxfield, Hatfield, and Johnston patents. This examination has led us to the conclusion that the complainant's expert is correct in the conclusions which he expressed.

A patent, No. 25,373, was issued on September 6, 1859, to Silas B. Terry, of Connecticut, as assignor of Silas B. Terry, Jr. He claimed to have invented a new and useful machine for manufacturing paper boxes. In his specification he says:

"This invention relates to a machine that is designed to facilitate the manufacture of circular paper boxes, and it consists in the employment or use of a rotating clamp, gage or socket, discharging ring, pressure roller, and guide; the above parts being arranged substantially as hereinafter described and used in connection with a folding device, whereby the manufacture of the above-named boxes is greatly expedited and the work done in a perfect manner."

The operation of the Terry patent involved considerable manual labor, the operator being required, among other things, to turn the mandrel by hand; and the roller, while performing its work, had to be pressed down by hand. The patentee, after describing the invention, states:

"It will be seen that the invention connects the circular parts $d^1$ with the strips $b^1$, said parts forming the tops and bottoms and sides of the boxes, the remaining work—such as the pasting of the strip $a^*$ in one part—being done by hand, as also the covering of the boxes, if desired, with colored paper. When the parts $a^1$ are connected with the parts $b^1$ of the box, the lever $H$ and mandrel $C$ are forced back by hand, the head $D$ passing within the socket $F$, and the band $E$, being arrested by the screws or stop $J$, serves to force the part of the box just formed off from the head $D$."

The Terry patent is not seriously relied on, and fails to disclose the mechanism of the patent in suit.

The Maxfield patent, No. 52,432, was issued February 6, 1866, for an improvement in machinery for making boxes. His specification describes his invention as follows:

"My invention relates to a mechanism for pressing a strip of glued paper upon the edge of the box at the junction of the bottom and sides or rim and lid, so as to form a union of the circular end with the cylindrical sides of the box; also in a means for pressing upon the cylindrical sides of the box a strip of glued or pasted paper to form a covering for the same, and turning the edges of said paper over, the one edge upon the circular end piece, and the other edge over and within the circular rim of the box or lid, thereby a strong box, smoothly covered, can be made with great rapidity."

This machine is manually operated throughout, even the rotation of the parts being controlled by a hand-operated crank shaft. It is incapable of continuous or automatic operation. The testimony shows that it was intended as an aid to enable an operator to make collar boxes or the like, and that it is not adapted to make French edge pill boxes. The testimony indicates that pill boxes can be made by hand more speedily than by the Maxfield device. We can quite believe the witness who testified that he had seen girls make pill boxes by hand,

and that from his observation he could say that they would finish a number of boxes long before the unfortunate operator of the Maxfield patent had gone through the numerous muscular exercises required of him.

The specification of the Maxfield patent describes a mechanism for securing a cylindrical body to a circular head by means of a strip of paper wound around the box body. The instrumentalities by which this was accomplished consisted of a rotary mandrel co-operating in its forward and backward movements with a rotary pressing wheel. It does not disclose the complainant's combination. It cannot be said that the mandrel of that patent rotated intermittently. A wheel which is rotated by hand until the hand stops rotating it certainly does not rotate intermittently.

Hatfield had two patents. Patent No. 67,050 was issued July 23, 1867. Patent No. 100,621 was issued March 8, 1870. Both patents were for improvements in paper box machines. In the specification of the first patent he states:

"It is well known to paper box manufacturers that boxes, the tops and bottoms of which project beyond the cylindrical body, have hitherto been so expensive and difficult to finish neatly that they have been imported from France, and have thus come to be designated as 'French edge boxes.'"

He goes on, then, to say that it is the object of his invention—

"to finish by machinery paper boxes called technically 'French edge boxes,' and therefore calls the machine of the patent the 'French edge machine.'"

In the specification of the second patent he says that his—

"invention consists in certain mechanism, fully described hereafter, for forming paper boxes and lids for the same, either with or without flanged ends."

The Hatfield patent was intended to manufacture, and was used to manufacture, large boxes, like collar boxes. The operation of the Hatfield mechanism, as described in the specification of patent No. 100,621, shows that two operators were needed to work the machine, and that they were also required to do a material part of the work by hand. In our opinion the Hatfield patent is not capable of use for successfully making pill boxes. We agree with the complainant's expert that, if the present day art had not been advanced beyond the Hatfield patent, it is certain that we should not to-day have the advantage of machine-made pill boxes. In our opinion, the Hatfield construction does not describe the mechanism of the patent in suit, and it should not be regarded as in any way anticipatory of the accomplishment of the inventors of this patent.

The Johnston patent, in the opinion of defendant's expert, is the closest reference to the patent in suit. In his opinion that patent discloses the entire subject-matter of each of the claims, 1, 3, and 5, of the patent in suit. The Johnston patent, No. 514,149, was issued February 6, 1894, to Edward A. Johnston and Arthur H. Marshall; the former having assigned one-half of his right in the invention to the latter. When the application for the patent in suit was before the Patent Office, the examiner five separate times in the course of three years rejected 20 claims on the ground that they were anticipated by the John-

ston patent, and each of these five constructions included claims 1, 3, and 5 of the patent, which are the claims here in suit. The attorneys for the complainant, we are told, "acquiesced" in the rejection of the claims on the Johnston patent and resorted to an interference proceeding to overcome the rejection; and it is urged upon us in argument that, in view of this "acquiescence" of complainant's attorneys, the complainant cannot now be heard to say that the Johnston patent does not anticipate these claims. The complainant, however, never amended its claims, but overcame the rejection by an interference. It is not estopped, therefore, by what occurred in the Patent Office, and is at liberty to prevail in this suit as against the Johnston patent, if upon the merits it is so entitled.

The defendant insists that claims 1, 3, and 5 of the patent in suit describe simply what is shown in the Johnston patent. The defendant's expert, however, was asked and answered as follows:

"Q. Do you find anywhere in the prior art, or in any patent that you have seen or discussed, and relating to paper boxes in any way, mechanism like that employed both in plaintiff's and defendant's machine, and which is embodied in the rotating frame that carries two rotating mandrels? I am referring to the parts which make up $G$-$H$ $m$, this whole structure that is colored green here, $h$-$6$? A. Yes; such a structure is in the Johnston patent, unless you wish to restrict your question to the automatic machines for rotating the mandrel frame. Q. But it is not in any other patent, except the Johnston patent? A. No."

The defendant's expert, after discussing the Johnston patent and showing that a certain part was operated by hand, was asked by the court:

"Q. Why does he do that by hand, do you know? A. I presume because he hadn't invented a way of doing it automatically."

The machine of the Johnston patent is not an automatic machine. The machine of the complainant's patent is an automatic machine. The Johnston machine is incapable of performing the functions of complainant's machine; Johnston never having been able to adapt his patent to automatic machinery.

It is not important to determine whether Johnston was the real inventor of the machine of his patent, or whether the credit of the generic features of the invention belongs to Rowell and Little. Johnston worked at the complainant's factory in 1892, and while working there gained his knowledge from complainant's machine, and embodied it in his application for his patent, which was first filed in the Patent Office.

One of the patentees of the patent in suit, Mr. Rowell, testifies positively that, when Mr. Johnston began to work in his factory for him in 1892, they then had in the shop a machine which was like the one in the patent. His testimony was as follows:

"Q. Do you remember what type of machines for making these French edge pill boxes you had in your factory at that time? A. In the side room we had the machine with the round circular table for holding the papers. In the machine shop itself we had under construction the flat-tabled machine with movable mandrels. Q. What was the shape of that table, in comparison with the table shown in your patent in suit? A. The one in my side room? Q. No; the one in the shop. A. One in the shop is like the one that is in the patent. Q. How about the mandrel frame, in its construction and connections?

A. It is the same as in the patent.　Q. And those features were in this machine that was in your shop before Johnston ever came to you?　A. They were."

The fact is that Johnston, after taking out his patent and within a very short time thereafter, signed a written disclaimer, as well as a concession of priority, to the patentees of the patent in suit, and that subsequently, an interference having been declared in the Patent Office between him and these patentees, priority was awarded to the latter. The "Johnston's Disclaimer" is signed by both Johnston and Marshall. They disclaimed 28 of the claims made in their patent, stating that:

"They have reason to believe that through inadvertence, accident, or mistake the specification and claims of said letters patent are too broad, including that of which the said Edward A. Johnston was not the first inventor."

"Johnston's Concession of Priority" is also signed by both Johnston and Marshall.　It "hereby concedes," to use its language—

"priority of invention to Edward N. Rowell and James Little, both of Batavia, in the state of New York of the subject-matter claimed in his said letters patent in the following claims, to wit."

Then follows an enumeration of 28 claims as to which they concede to the complainant priority of invention.　Johnston was very young when he signed this disclaimer, and the defendants would have us believe that he was in some way coerced or deceived or fooled into signing it.　We have not been able to take any such view of it.　Johnston possessed unusual ability as a mechanician, and became a successful and frequent inventor.　Although he was young when he signed the disclaimer he was not stupid; neither was he so young that he did not fully understand what he did when he put his signature to the paper. His conduct deprives his testimony of all probative effect.　This court cannot attach importance to his statement of invention after his acknowledgment that priority is in the complainant.

In our view of this case, the Johnston patent being excluded, the prior art consists of nothing but the Hatfield and Maxfield "machines." In neither of these "machines" are the three essential parts of the finished box brought together automatically, but it is necessary to have the constant attention and assistance of one or more operators doing a large part of the work, and neither device is capable of producing a completed pill box without assistance on the part of the operator.　They were properly designated by one of the witnesses, who referred to them as "so-called machines."　He said he preferred "to call them tools or implements, because they are not really machines, but only aids to manual labor," being merely adapted to assist the operator in the manufacture of large boxes, like collar boxes, rather than small pill boxes.

It is the opinion of this court that the device of the patent in suit is the first really successful machine for the manufacture of small pill boxes, and we therefore hold that the patent in suit is a pioneer patent, and as such is entitled to the broad construction, and to the broad range of equivalents, which the law accords to such patents.

The patent in suit being valid, we come to the consideration of the question of infringement.　That the machine of defendant may be

240 F.—61

superior to that of the complainant may be true. The question, how-
ever, is whether the machine infringes the patent in suit. We have said
in an earlier part of this opinion that the specification of defendant's
patent states that the object of the invention is to produce a machine
for making round pill boxes. But the specification goes on to specify
other objects of the invention. It says:

"Another object of this invention is to form a round pill box of a separate
ring and a head, made preferably of cardboard.

"Another object of this invention is to construct a machine so as to auto-
matically assemble the ring and head in proper position with relation to
each other, and to fasten them together by wrapping around them one or
more strips of paper which have been covered with paste, thus joining the
two parts together.

"Another object of this invention is to provide a divided box form, on which
the box is assembled, and which box form is capable of a variety of operations
on said box form.

"Another object of this invention is to provide a forming wheel in the ma-
chine that will co-operate with the box forms to wrap the box and finish it.

"Another object of this invention is to provide an improved mechanism for
pasting and feeding the wrapping paper for the box.

"Another object of this invention is to provide improved feeding mechanism
for the box rings and head.

"Another object of this invention is to provide an improved ejector for
casting the finished boxes from the machine.

"Another object of this invention is to provide an automatic tension de-
vice for taking up the slack in the wrapping paper for the box and keeping
it under uniform tension."

The defendant's machine has a rotating mandrel frame which corre-
sponds exactly with the rotating mandrel frame of the patent in suit.
The mandrel frame is fixed to a shaft which corresponds to the shaft
of the complainant's patent. The shaft is arranged to rotate intermit-
tently, so as to make a one-half revolution, and then to remain sta-
tionary during the time that the main shaft completes its revolution,
which corresponds precisely in this respect with the operation of the
patent in suit. The mandrel frame has shafts journaled therein; the
shafts being provided with mandrels, which correspond to the man-
drels of the patent. There are two rotating mandrels, as there are in
the patent in suit. Each mandrel has a gear, which is adapted to mesh
with a gear segment when one mandrel is in the lower position, and in
this respect defendant's machine corresponds in operation with that of
the gear and the rack of complainant's machine. As soon as one of
the mandrels of defendants' machine is in the lower position its gear
meshes with the segment, and as the main shaft rotates the lower man-
drel revolves as in the machine of complainant's patent; and as in that
patent, so in defendant's, the main drive shaft is driven by a belt. The
shaft carries a gear which meshes with a second gear and carries a
pressure and ironing device. The arrangement is such that one gear
remains idle one-half of the time, whereby during the time that the
wrapping and ironing takes place on the revolving lower mandrel the
mandrel frame will not revolve, but will remain stationary. When the
wrapping and ironing is finished, and the work of the lower mandrel
is completed, the clutches are thrown in, and cause the mandrel frame
to revolve, thereby bringing the upper mandrel to the lower position.

In the meantime the wrapping and ironing roll or cylinder completes its movement, so that that part of it which first came into pressing contact with the box on the lower mandrel will again be in position to come into contact with the box parts that have been carried into the box-making position when the upper mandrel has come down to the position vacated by the lower mandrel.

The defendant's machine has a "forming wheel" having a diameter of about 18 inches and a pair of box forms that alternately co-operate with this forming wheel for the purpose of forming the boxes. The complainant's machine has no forming wheel, but has a reciprocating table. The table is flat, and has a reciprocating motion, and slides back and forth in guides that are provided in the support for it. Mounted above this table is a mandrel frame that carries two mandrels. This mandrel frame is rotated intermittently, so as to bring the mandrel alternately into engagement with the table when the table is moving to the right. Mandrel No. 1 makes contact with the table when the table is making its odd movement to the right, and mandrel No. 2 makes contact with the table when the table is making its even movement to the right. Neither mandrel makes contact with the table when the table is moving to the left.

As claim 1 of the patent in suit calls for "the movable table," and claim 3 for "the reciprocating table," and claim 5 for "the movable table," and defendant's machine has no such table, it is alleged that there is no infringement. This court, however, holds that the defendant's machine in its essential parts is a reproduction of the machine of the patent in suit. The two machines embody the same general mechanical principles. It is clear that the defendant's machine has the intermittently movable mandrel frame, carrying a set of journaled mandrels adapted to be alternately and successively brought into a fixed box-making position. The rotation of the box frame on one of the journaled mandrels causes the paper strip to be wound around the boxes, and a pressure device is used to bear against the ungummed side of the paper band at the place where the band covers the outer edge of the disc. In the complainant's machine the pressure device is a movable table. In the defendant's device it is in the shape of a forming or pressing wheel, which is merely a mechanical equivalent for the flat grooved table of the patent in suit. In function and mode of operation it is immaterial whether the pressure device is located on a horizontal plane or on a curved surface. The two devices perform practically the same operation, so far as concerns the application of direct pressure to the three box elements at the time they are being united.

The defendant's apparatus has the rotary wheel provided with two mandrels, 180 degrees apart, each mandrel being revolvable on its own shaft or journal, each one of defendant's mandrels being brought into operative position in exactly the same way as in the apparatus of the complainant. In the language of claim 3 of the patent, there are mandrels adapted to bear successively, and there is a rotary frame provided with bearings supporting said mandrels.

But if the "table" of the claims is to be confined to a flat surface, and reciprocating table can have no equivalent except a flat surface that

moves to and fro, as does the piston of a steam engine, then the defendant has not (in the language of the third claim) any "reciprocating table" against which the mandrels "bear successively." What defendant does have is another wheel with a considerable segment of the circumference shaved off, so that only a portion of the circumference touches the mandrel with the pasteboard ring upon it. When the cutout segment of this so-called finishing wheel of defendant's is nearest the mandrel's working position, said cut-out portion does not touch; but it is observable that so much of defendant's finishing wheel as ever touches the pasteboard ring on the mandrel always approaches from the same side and by revolution always assumes the same position before beginning work, as does the complainant's reciprocating table. In other words, the defendant's circular motion produces the same result for the same purpose as does complainant's reciprocating motion, and we think it is very old in patent law and in mechanics that a circular movement may be the equivalent of a reciprocating movement.

But complainant's reciprocating table, owing to its flatness, does another thing—i. e;, it carries the gummed paper, which is the forming agent of the box. The defendant's finishing wheel does not, and cannot, carry the paper. Defendant's machine feeds the paper to the pasteboard ring and disc at the point where the finishing wheel and the mandrel meet by means of a reciprocating feed directly actuated by a cam, and shown in detail in Figure 24 of defendant's patent.

It is clear to us that the object, the mechanical and commercial aim, of both these parties is this: They must procure the application of gummed paper to the revolving and juxtapositioned disc and ring at the tangential point where the ironing and pressing surface is applied to the disc and ring. Now it makes no difference whether the tangential point of application is the tangent of a plane surface with a cylindrical one, or of another cylindrical surface with the first cylindrical one—i. e., the disc and ring. A tangent is always the same thing, and the point of contact is just one point (theoretically), no matter whether the tangency is that of a straight line or a circle. Then, too, the segmentary cut-away revolving finishing wheel of the defendant's machine is, we think, the exact equivalent of the reciprocating table of the complainant.

An examination of the complainant's device and of defendant's device makes it obvious that what each strives to accomplish, and what each does accomplish, is to get tangential pressure upon the revolving pill box form; and tangential pressure can be gotten just as certainly with a wheel as with a table, with a curved line as with a straight line, because the essence of a tangent is that it shall touch the periphery of a circle at one point only. This is done in the patented device by sliding the table underneath the pill box form and making it revolve by tangential pressure. In the interval of idleness the table retires or reciprocates, and so is able to give the same impulse in the same manner ad infinitum. In defendant's machine the tangential impulse is given to the same pill box form on the same rotating mandrel by the pressure of a wheel, only a portion of the periphery of which is useful—say one-half. The rest of the wheel is recessed or cut away, so

that, while that portion of the wheel is passing the tangential point, the mandrel is being reloaded with another pill box form. Motions which are circular and reciprocating may be, and usually are, equivalents when used for the same purpose, and they are equivalents in this case. What the defendant is really doing is using a circular table, instead of a flat one, and getting the effect of reciprocation by revolving his wheel, instead of retracting his table.

We come, in conclusion, to the objection that, owing to the delay in putting the patent in suit through the Patent Office, the patentees have lost their right to equitable relief. The delay complained of was unusual, but we are not able to discover that the defendant has been prejudiced thereby, or that anything has been put into the patent that was not there from the beginning.

Claims 1, 3, and 5 of the patent in suit are valid and infringed. The decree is reversed, with directions to enter a decree as prayed for in the bill.